**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **RACHELLE RAND, ESPERANZA GOTTSCHAU, and RAMON SOTO on Behalf of Themselves and All Others Similarly Situated**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**EYEMART EXPRESS, LLC,**<br><br>**Defendant.** | **Case No. 3:24-cv-00621** |

**DEFENDANT EYEMART EXPRESS, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Plaintiffs' Opposition to Eyemart's Motion to Dismiss relies on new factual allegations and materials that were not included in Plaintiffs' Complaint, effectively conceding the Complaint cannot survive a Motion to Dismiss.[1] As explained more fully below, Plaintiffs simply cannot overcome otherwise applicable one-party consent to recording laws. Further, Plaintiffs' pleaded factual allegations foreclose any finding of contemporaneous interception—a required element for the wiretapping claims Plaintiffs pursue. Plaintiffs' remaining common law claims fail for similar reasons. Plaintiffs' alleged uses of Eyemart's public website do not state an injury-in-fact for which this Court would have jurisdiction, nor a claim for which relief can be granted. Plaintiffs' Complaint should be dismissed.

[1] For ease of reference, we have tabulated these new factual allegations in **Appendix A**. Insofar as such allegations are admitted into the motion record or the pleading record by the Court, Eyemart wishes to reserve the right to file or re-file such Rule 12 motions as may be responsive to the then-current version of the Complaint. To the extent new allegations are addressed in this Reply, Eyemart does so without prejudice to the foregoing and its rights under Rule 12.

## I. PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS TO ESTABLISH STANDING OR STATE A CLAIM.

Plaintiffs' Response to Eyemart's Motion to Dismiss attempts to assert additional facts and cites to websites and articles not referenced in the Complaint. *See* **Appendix A** (compiling some of the facts and outside materials in Plaintiffs' Response but not alleged or cited to in Plaintiffs' Complaint). This is not permitted, and the Court must ignore those additional facts in ruling on Eyemart's Motion to Dismiss. *Scanlan v. Tex. A & M Univ*., 343 F.3d 533, 536 (5th Cir. 2003) (ruling that in determining whether to grant a motion to dismiss, a district court may generally not "go outside the complaint.").

Plaintiffs effectively concede that they have failed to allege sufficient facts to support their claims. *See* Dkt. # 24, p. 20, fn. 20. Simply alleging that a plaintiff provided some unspecified health information through interactions on a website is insufficient to meet the particularity requirements for lawsuits filed in federal courts. *See Murphy v. Thomas Jefferson University Hospitals, Inc.,* No. CV 22-4674, 2023 WL 7017734, at *6 (E.D. Pa. Oct. 10, 2023) (holding allegations that communications at issue concerned medical information, systems, or conditions "are not entitled to the assumption of truth" and fail to meet the pleading specificity requirements under *Iqbal* and *Twombly*); *Banik v. Tamez*, Case No. 7:16-CV-00462, 2017 WL 11713725, at *3 (S.D. Tex. Sept. 20, 2017) ("Without further detail concerning the nature of the recorded conversations (i.e. location, participants, content, duration, etc.) it is impossible to determine whether they [meet required elements for claim]."). What's more, Plaintiffs cannot allege they entered HIPAA Protected Health Information into the Eyemart website, because the website does not have those functionalities. *See* Dkt. # 15, p. 4, fn. 3 (showing that website functionality does not permit individuals to schedule appointments on the website); *see also* Compl., p 21, fn. 56

(website with Nike sunglasses exemplar cited by Plaintiffs with "find these near me" button but no option to purchase online or enter prescription information).

Plaintiffs effectively concede they have failed to plead sufficient facts to support standing or a cause of action by alleging additional facts for the first time in their Response. Plaintiffs' Complaint should be dismissed in its entirety.

## II. ONE-PARTY CONSENT APPLIES TO THE "COMMUNICATIONS" AT ISSUE, AND NO CONTRARY RESULT IS REQUIRED BY HIPAA.

Even if this Court determines that interactions on Eyemart's public website are "conversations" between Eyemart and the users of that website, Eyemart is party to that "conversation" and can record it with or without Plaintiffs' consent. *See Zak v. Bose Corp*., Case No. 17-cv-02928, 2020 WL 2762552, at *3 (N.D Ill. May 27, 2020) (dismissing claim for violation of Illinois Eavesdropping Act, with prejudice, because defendant was a party to the alleged recorded "conversation"); *In re Nickelodeon Consumer Priv. Litig*., 827 F.3d 262, 275 (3d Cir. 2016) (discussing "one party consent language in the Wiretap Act"); Mo. Rev. Stat. § 542.402.1 ("It is not unlawful for a person to intercept a communication to which he is a party or where one of the parties to the conversation has consented to the interception").

Plaintiffs' attempt to overcome otherwise applicable one-party consent statutes by framing the recording at issue as a violation of HIPAA is fatally flawed. The law is clear: to meet the tort/crime exception to otherwise applicable one-party consent statutes, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *In re Google Cookie Placement*, 806 F.3d 125, 145 (3rd Cir. 2015); *see also Cohen v. Casper Sleep Inc.*, Nos. 17cv9325, 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018) (dismissing complaint where defendant collected data for targeted marketing). This exception is "construed narrowly" and "is

confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party." *Stark v. United States*, No. 3:16-CV-298-M, 2017 WL 1185278, at *4 (N.D. Tex. Mar. 6, 2017) (quoting *United States v. Jiau*, 734 F.3d 147, 152 (2d. Cir. 2013)). Nothing close to that is alleged here. Plaintiffs do not allege that Eyemart (or Meta) recorded Plaintiffs' interactions on the Eyemart website for the purpose of blackmailing, threatening, or publicly embarrassing Plaintiffs.

Instead, Plaintiffs allege the recording at issue violates HIPAA. This is unavailing because (1) HIPAA does not afford a private right of action to individuals, and (2) the public website interactions alleged by Plaintiffs are devoid of specificity and have not been pleaded or shown by Plaintiffs to constitute PHI under HIPAA.[2]

Just as alleged HIPAA violations cannot give rise to a negligence *per se* claim, so too such allegations cannot be used to skirt otherwise applicable one-party consent laws. *See Scoggins v. Floyd Healthcare Mgmt. Inc*., Case No. 4:14-CV-00274, 2016 WL 11544774, at *42 (N.D. Ga. June 10, 2016) ("HIPAA does not provide a civil remedy. Accordingly, [plaintiff] cannot pursue claims of negligence *per se* against these defendants for an alleged HIPAA violation"); *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) ("Because HIPAA specifically delegates enforcement, there is a strong indication that Congress intended to preclude private enforcement."); *Brush v. Miami Beach Healthcare Grp. Ltd*., 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) (plaintiffs

[2] To the extent more is needed, by Opinion and Order dated June 20, 2024, the Honorable Mark T. Pittman of this Court vacated a portion of the most recent Guidance from the U.S. Department of Health and Human Services ("HHS") regarding web-tracking on this same basis, *i.e.*, that the statutory authority conferred on HHS by HIPAA does not extend to what the Court termed the "Proscribed Combination," whereby HIPAA prohibitions and requirements had been deemed by HHS to apply to "circumstances where an online technology connects (1) an individual's IP address with (2) a visit to a UPW [unauthenticated public webpage] addressing specific health conditions or healthcare providers." *Am. Hosp. Ass'n v. Becerra*, — F. Supp. 3d ----, No. 4:23-cv-1110, 2024 WL 3075865 (N.D. Tex. June 20, 2024).

"cannot manipulate the common law to state a private, statutory cause of action where none exists.").

Consistent with Judge Pittman's recent ruling, Eyemart's integration of the Meta pixel into certain sections of Eyemart's public website as alleged in the Complaint does not violate the HIPAA Privacy Rule. "[E]ven if [an unauthenticated public webpage]'s metadata could identify a particular individual, that information cannot become [HIPAA Individually Identifiable Health Information] based solely on the visitor's subjective motive for visiting the page." *Am. Hosp. Ass'n v. Becerra*, — F. Supp. 3d ---, No. 4:23-cv-1110, 2024 WL 3075865, at *12 (N.D. Tex. June 20, 2024) (internal quote omitted). "Simply put, **Identity** (Person A) + **Query** (Condition B) ≠ **IIHI** (Person A has Condition B)." *Id.* at *14 (emphasis in original). As explained in Judge Pittman's decision, a user's subjective intent for visiting a public website is generally unknown to website operators (in this case, Eyemart) and "HIPAA doesn't mandate clairvoyance," *id*. at *7. Thus, even if Plaintiffs did have the right to allege what violates HIPAA (they do not[3]), there is no HIPAA violation alleged because neither Meta nor Eyemart know Plaintiffs' subjective motivation for visiting the Eyemart website, as would be required to turn their public website interactions into individually identifiable health information.

Plaintiffs do not allege that Eyemart recorded their interactions on the Eyemart website ***for the purpose*** of blackmailing, threatening, or publicly embarrassing Plaintiffs as would be required

[3] There are countless reasons why an individual would visit the Eyemart website unrelated to seeking individualized healthcare, such as an employee at Nike checking third-party pricing of the sunglasses cited as an exemplar in Plaintiff's Complaint, or a competitor doing comparison research. Additionally, an individual may go to the website for the healthcare needs of somebody else, like their friends, family, or countless other third-parties unknown and unknowable to Eyemart. "If a covered entity's [public website] greets visitors with a dropdown box requesting their subjective motive for visiting the page, that would be one thing…But absent such an admittedly bizarre scenario, [public website interactions] cannot become [individually identifiable health information] as unambiguously defined [in HIPAA]." *Becerra*, 2024 WL 3075865, at *14.

to overcome one-party consent laws. Further, Plaintiffs do not allege that Eyemart had sufficient knowledge as to the subjective motive of its individual website visitors to connect any potentially provided health information with any particular individual to whom that health information could relate. Plaintiffs' wiretapping claims alleged under Counts I, II, and III of Plaintiffs' Complaint should be dismissed.

### III. PLAINTIFFS' PLEADED FACTUAL ALLEGATIONS FORECLOSE ANY FINDING OF CONTEMPORANEOUS INTERCEPTION.

Plaintiffs' Complaint states that the alleged "interception" of Plaintiffs' browse-and-click website interactions happens nearly instantaneously. *See* Compl. ¶¶ 110, 123, 199 (discussing the "nearly instant[]" duplication of information that is transmitted). This contention formed the basis for a number of dismissal arguments in Eyemart's Motion to Dismiss. Plaintiffs' opposition now seeks to plead in another direction without amending their Complaint, *i.e.*, to now bring in new facts not alleged in the Complaint, first to claim that "interception" is in fact instantaneous and not "nearly instantaneous," and second to admit that Eyemart was correct in its Motion to Dismiss when Eyemart showed that the technology at issue creates two separate (but duplicate) communications, not a unitary communication that has been "intercepted." The fact that these are duplicated conversations is the reason Plaintiffs' new allegations fail as well.

Plaintiffs do not allege an interception of a single conversation, but instead allege two conversations occur: (1) between Plaintiffs' devices and Eyemart's servers; and (2) between Plaintiffs' devices and Meta's servers. Dkt. #24, p. 18 (explaining that the pixel "creates ***a new HTTP Request*** on the user's device, which ***duplicates the information*** sent to the website and ***sends a copy*** to Meta.") (emphasis added). In football terms (as the analogy is used in *Fraser*) Plaintiffs allege there are two balls thrown to two separate receivers, not that a single ball is thrown to a single receiver with that ball intercepted in transit. *See Fraser v. Nationwide Mut. Ins. Co.*,

352 F.3d 107, 114 (3d Cir. 2003). Plaintiffs do not dispute that the transmission of information cannot be instantaneous, as would be the case in a telephone wiretap which the laws at issue were originally directed towards, but instead argue that this "near instant[]" transmission of duplicate communications to two separate parties is close enough to meet the "contemporaneous" requirement. Dkt. #24, p. 18. This is simply not the law, and Eyemart's motion should be granted. *See Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967, at *5 (Cal. Super. Ct. 2023) ("This interpretation may be narrow, given the goals of the statute. It may be based on outdated technology. Nonetheless, given the established construction of the language, this Court will follow it.").

Plaintiffs' allegation of duplication, not interception, of website interactions, provides an additional basis for why Plaintiffs' wiretapping claims alleged under Counts I, II, and III of Plaintiffs' Complaint should be dismissed.

## IV. PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED.

Plaintiffs contend their "intrusion upon seclusion" claims survive because "a reasonable expectation of privacy typically exists where a plaintiff is transmitting health-related information to a medical care provider." Dkt. # 24, pg. 22. Yet, as stated above, no such allegation is made here, and Plaintiffs do not allege they purchased prescription eyewear on the Eyemart website or scheduled an appointment on that website. Tellingly, Plaintiffs' opposition states that Plaintiff Rand will allege she had the subjective intent to purchase prescription eyewear if granted leave to amend. *Id*. at fn. 20 and 22. However, "[a] user's intent in visiting [an unauthenticated public webpage] is unknowable" and "HIPAA doesn't mandate clairvoyance" so as to turn a public website interaction into a transmission of healthcare information. *Becerra,* 2024 WL 3075865, at *7. Additionally, the fact that Plaintiffs provided Eyemart with the information at issue warrants dismissal of their common law privacy claims. *Steinberg v. CVS Caremark Corp.*, 899 F. Supp.

2d 331, 342-43 (E.D. Pa. 2012) (dismissing intrusion claim, stating, "liability for intrusion upon seclusion cannot exist where a defendant legitimately obtains information from a plaintiff . . . This is so even where those facts voluntarily offered are later disclosed to a third party, even by . . . newspaper publication").

Plaintiffs claim their breach of express and implied contract claims should survive because "Eyemart clearly violated the terms of its Privacy Policy and HIPAA Privacy Statement." Dkt. #24, pg. 21. As Plaintiffs now allege there is a binding written contract, the breach of implied contract claim (Count V) must be dismissed. "As in physics, two solid bodies cannot occupy the same space at the same time, so in law and common sense, there cannot be an express and implied contract for the same thing, existing at the same time." *In re VTech Data Breach Litigation*, No. 15 CV 10889, 2018 WL 1863953, at *3 (N.D. Ill. Apr. 18, 2018) (citations omitted). Further, the tracking at issue does not violate HIPAA. *See* Section II above. Nor can the HIPAA-required Notice of Privacy Practices give rise to a claim for breach of contract. *See Brush v. Miami Beach Healthcare Grp. Ltd*., 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) (holding that HIPAA required notice provisions are not contractual in nature and merely informed patients of their rights under HIPAA; therefore, the breach of contract claim failed as a matter of law).

As Plaintiffs concede that "the Terms of Use are quiet as to the handling of [Plaintiffs' information]" (Complaint at ¶ 148) and the law provides that HIPAA notices and other requirements cannot provide a cause of action for breach of contract, that leaves only the Privacy Policy, which Plaintiffs fail to allege they even read. This too warrants dismissal. *See Willingham v. Glob. Payments, Inc.*, Case No. 1:12–CV–01157, 2013 WL 440702, at *20 (N.D. Ga. Feb. 5, 2013) ("broad statements of reliance on a defendant's website and privacy statement do not give rise to contract claims where, as here, Plaintiffs do not allege that they read and relied upon those

statements”). Further, Plaintiffs fail to explain how that Privacy Policy which expressly discloses the use of “third-party tracking services to track non-personally-identifying information about visitors to our Websites” including use of “JavaScript, pixels, transparent GIF files, and other means” (Complaint at ¶ 59, fn. 29) is breached other than vaguely stating that “health information was used for marketing purposes without previous written authorization.” Dkt. # 24, p. 21. But as discussed above, public website interactions do not transform a user’s button clicks into “health information” without more than has been pleaded here. *See* Sections II-III.

For these and all the reasons stated in Eyemart’s Motion to Dismiss, Counts IV, V, and VI of Plaintiffs’ Complaint must be dismissed.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Eyemart Express LLC respectfully requests this Court dismiss the Complaint for lack of standing and failure to state a claim and render any and all further relief which this Court deems just and proper.

Dated: July 2, 2024

By: */s/ Andrew F. Newman*
Andrew F. Newman
Texas State Bar No. 24060331
**POLSINELLI PC**
2950 N. Harwood Street, Suite 2100
Dallas, Texas 76005
Tel: (214) 661-5506
Fax: (214) 397-0033
Email: afnewman@polsinelli.com

John C. Cleary (*admitted pro hac vice*)
New York Bar No. 1969146
**POLSINELLI PC**
600 Third Avenue, 42nd Floor
New York, NY 10016
Tel: (212) 413-2837
Fax: (212) 684-0197
Email: john.cleary@polsinelli.com

Jonathan E. Schmalfeld (*admitted pro hac vice*)
Missouri Bar No. 68374
**POLSINELLI PC**
7676 Forsyth Boulevard, Suite 800
St. Louis, MO 63105
Tel: (314) 622-6621
Fax: (314) 231-1776
Email: jschmalfeld@polsinelli.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 2, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system.

*Andrew F. Newman*
Andrew F. Newman