# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| RACHELLE RAND, ESPERANZA GOTTSCHAU, RAMON SOTO, GEORGIANNA LASH, and AARON MEES on Behalf of Themselves and All Others Similarly Situated<br><br>        Plaintiffs,<br><br>v.<br><br>EYEMART EXPRESS, LLC,<br><br>        Defendant. | Case No. 3:24-cv-00621 |

## DEFENDANT EYEMART EXPRESS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.  SUMMARY OF ARGUMENT ................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................................. 3

    A.  Plaintiffs Rand, Gottschau, and Soto ................................................... 3

    B.  Additional Plaintiffs Lash and Mees ..................................................... 4

    C.  Additional Website Allegations ............................................................. 4

III.  ARGUMENT ....................................................................................................... 6

    A.  Rule 12(b)(6) Standard ......................................................................... 6

    B.  Plaintiffs Rand, Gottschau, and Soto Restate Allegations this Court has Already Rejected ................................................................................... 6

    C.  Plaintiffs Lash and Mees Do Not Plead Disclosure of IIHI to Meta ..... 8

    D.  Eyemart Cannot "Eavesdrop" on Communications Eyemart is a Party To ........... 9

    E.  Alleged HIPAA Violations Do Not Overcome One-Party Consent Laws ............. 9

    F.  Any Information Sent to Meta Is Not Sent Contemporaneously .......................... 13

    G.  Plaintiffs Consented to Any Tracking at Issue ..................................... 14

    H.  Plaintiffs Fail to Plead a Claim under the Illinois Eavesdropping Statute ........... 15

    I.  Plaintiffs Fail to Allege What Contract Terms Were Breached ........................... 16

    J.  Plaintiffs Fail to Allege a Plausible Factual Basis for an Expectation of Privacy in the Circumstances Alleged Here ....................................... 16

IV.  CONCLUSION ................................................................................................... 18

100425068.8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acara v. Banks*,
470 F.3d 569 (5th Cir. 2006) ...............................................................10

*Am. Hosp. Ass'n v. Becerra*,
--- F. Supp. 3d ---, No. 4:23-cv-1110, 2024 WL 3075865 (N.D. Tex. June 20,
2024) .....................................................................................6, 7, 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .........................................................................6

*Augustine v. Great Wolf Resorts, Inc.*,
Case No. 23-cv-00281-DMS-DTF, 2024 WL 3450967 (S.D. Cal. July 18,
2024) ...........................................................................................11

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal. Super. Ct. 2023) ...................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .........................................................................6

*In re: BPS Direct, LLC*,
Case No. 22-CV-4709, 2023 WL 8458245 (E.D. Pa. Dec. 5, 2023) .......11

*Brown v. Learfield Communications, LLC*,
Case No. 1:23-CV-00374-DAE, 2024 WL 3676709 (W.D. Tex. June 27,
2024) ...........................................................................................12

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017) .............................................10

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ...............................................................12

*Cook v. GameStop, Inc.*,
Case No. 2:22-CV-1292, 2023 WL 5529772 (W.D. Pa. Aug. 28, 2023),
*appeal filed*, No. 23-2574 (3d Cir. Aug. 29, 2023) .............................11

*Espinoza v. Gold Cross Servs.*,
2010 UT App. 151 (2010) .................................................................10

*Fraser v. Nationwide Mut. Ins. Co.*,
352 F.3d 107 .................................................................................13

*Glob. Pol'y Partners, LLC v. Yessin*,
    686 F. Supp. 2d 631 (E.D. Va. 2009) ................................................................13

*In re Google Cookie Placement*,
    806 F.3d at 145 ................................................................................................12

*Hartley v. Urban Outfitters, Inc.*,
    Case No. 23-4891, --- F.Supp.3d ----, 2024 WL 3445004 (E.D. Pa. July 17,
    2024) ..................................................................................................................11

*Jones v. Robinson Property Group, L.P.*,
    427 F.3d 987 (5th Cir. 2005) ..............................................................................8

*Licea v. Cinmar, LLC*,
    2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) ...............................................13, 14

*Lincoln v. Turner*,
    874 F.3d 833 (5th Cir. 2017) ..............................................................................6

*Martinez v. D2C, LLC*, Case No. 23-21394-Civ-Scola,
    2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) .........................................................9

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
    603 F. Supp. 3d 1183 (S.D. Fla. 2022) .............................................................10

*Nienaber v. Overlake Hosp. Med*
    No. 2:23-cv-01159-TL, 2024 WL 2133709 (W.D. Wash. May 13, 2024). ............12

*Okash v. Essentia Health*,
    Case No. 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ..........................12

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*,
    9 F.4th 247 (5th Cir. 2021) .................................................................................3

*Rogers v. City of Hous.*,
    627 S.W.3d 777 (Tex. App. 2021).......................................................................17

*Scoggins v. Floyd Healthcare Mgmt. Inc.*,
    Case No. 4:14-CV-00274, 2016 WL 11544774 (N.D. Ga. June 10, 2016)............10

*Snakenberg v. Hartford Cas. Ins. Co., Inc.*,
    299 S.C. 164, 383 S.E.2d 2 (Ct.App.1989).........................................................17

*Swinton Creek Nursery v. Edisto Farm Credit*,
    334 S.C. 469, 514 S.E.2d 126 (1999) ................................................................16

100425068.8

*T.D. v. Piedmont Healthcare, Inc*
., Case No. 1:23-CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28,
2024) ......................................................................................................10, 12

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).......................................3

*Tureen v. Equifax, Inc.*,
571 F.2d 411 (8th Cir.1978) ...................................................................................17

*Willingham v. Glob. Payments, Inc.*,
Case No. 1:12–CV–01157, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013)................16

**Statutes**

42 U.S.C. §§ 1320d–5, d–6.......................................................................................10

Electronic Communications Privacy Act.....................................................................9

Health Insurance Portability and Accountability Act (HIPAA) ...................1, 3, 7, 8, 9, 10, 11, 12

**Other Authorities**

Fed. R. Civ. P. 8(a)(2).................................................................................................6

Fed. R. Civ. P. 12(b)(6)..................................................................................1, 3, 5, 6

James W. Moore *et al.*, Moore's Federal Practice § 12.34[2] .......................................3

100425068.8

Defendant Eyemart Express, LLC ("Eyemart") respectfully moves this Court to dismiss Plaintiffs' Amended Class Action Complaint (ECF 29) (the "First Amended Complaint" or "FAC") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. As explained below, Plaintiffs' causes of action for (I) Violation of the Federal Wiretap Act; (II) Violation of the Missouri Wiretap Act; (III) Violation of the Illinois Eavesdropping Act; (IV) Intrusion Upon Seclusion; (V) Breach of Implied Contract; and (VI) Breach of Contract should be dismissed.

## I.     SUMMARY OF ARGUMENT

The First Amended Complaint fares no better than the original Complaint. This suit is premised on the assertion that Plaintiffs' use of a public website—one that employs widely used data analytics, similar to the majority of e-commerce platforms—somehow caused them actionable harm. However, Plaintiffs fail to allege that any private information they entered into Eyemart's website (the "Website") was disclosed by Eyemart to Meta, nor do they explain how the use of these standard data analytics services could have possibly injured them or given rise to a cause of action.

In dismissing the original Class Action Complaint (Dkt. #1), on a motion to dismiss by Eyemart, the Court ruled that the Plaintiffs failed to provide any plausible factual basis for their claims that their interactions with the Website in 2022 and 2023 constituted improper compromise of their "individually identifiable health information" ("IIHI") under the Health Insurance Portability and Accountability Act ("HIPAA"). *See* Memorandum Opinion and Order, pg. 8-9 (Dkt. #28). The Court based this ruling on the inherent subjectivity involved in unauthenticated website activity, where website visitors are free to make inquiries about themselves or others, or even hypothetical inquiries about persons or problems that do not exist.

100425068.8

With leave to re-plead granted by the Court, Plaintiffs' FAC has added vast amounts of verbiage and various third-party forms and published works, but these all fall short of rectifying the dispositive pleading defects in the original Complaint, or otherwise demonstrating a basis for suit.

First, the original three Plaintiffs (Rachelle Rand, Esperanza Gottschau, and Ramon Soto) have elected to stand on their original factual allegations, with virtually no elaboration or new facts as to those Plaintiffs' interactions with the Website that would warrant a different result than the Court's prior dismissal. Their claims should now be dismissed with prejudice.

Two new Plaintiffs (Georgianna Lash and Aaron Mees) have joined the suit and allege that they entered their prescription eyewear information into the Website, but they still fail to plead any plausible factual basis for contending that the information entered was shared with Meta. Instead, they rely on allegations that Meta can receive and sometimes does receive information regarding "PageView", "FindLocations", "AddToCart", and other information which does not include disclosure to Meta of any actual prescription information. Plaintiffs point to computer code which arguably shows Meta receives some information from some users about eyewear orders, but Plaintiffs fail to cite any computer code which shows Meta receives ***prescription information*** associated with any such orders; certainly not the prescription information of any of the named Plaintiffs.  The code cited in the FAC demonstrates what information is (and is not) transmitted through those coding terms and further makes it clear that no IIHI is sent to Meta.

Additionally, as previously briefed, the 1980s-era wiretapping laws cited by Plaintiffs only cover the instantaneous interception of communications, as in the example of a "wiretap" on a telecommunication line where a call is "intercepted" in transit. Here, again, the web technology pleaded in the FAC does not function as a 1980s-style phone tapping technology, *i.e.*, no party is

intercepting Plaintiffs' communications. In amending their Complaint, Plaintiffs did not even attempt to rectify this dispositive defect. Nor do Plaintiffs cure the deficiencies regarding their breach of contract or intrusion of seclusion claims, which the Court noted in dismissing the initial Complaint.

Finally, Plaintiffs' attempt to reframe an alleged HIPAA violation into a private right of action goes against the weight of authority. As previously briefed, Congress expressly considered and rejected providing a private right of action under HIPAA. There is a growing body of case law which holds that individuals who have their IIHI compromised in a data breach context cannot bring a HIPPA claim reframed as a cause of action under common law negligence or breach of contract. The same continues to be true here. Just as the original Complaint was dismissed, the FAC should likewise be dismissed.

## II.    FACTUAL BACKGROUND[1]

### A.    Plaintiffs Rand, Gottschau, and Soto

Plaintiffs Rochelle Rand, Esperanza Gottschau, and Ramon Soto have responded to this Court's October 1, 2024, ruling by electing to supply (i) minimal new factual allegations on behalf of Plaintiff Rand and (ii) no new factual allegations on behalf of Plaintiffs Gottschau and Soto. The new allegations by Plaintiff Rand, involving her subjective motives for visiting the Eyemart

---

[1] Plaintiffs' First Amended Complaint now includes 95 footnotes and numerous citations to extrinsic materials. Under the doctrine of "incorporation by reference," a district court may look beyond the pleadings at certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting a Rule 12(b)(6) motion into one for summary judgment. *See* James W. Moore *et al.*, Moore's Federal Practice § 12.34[2] (3d ed. 1999); *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.,* 9 F.4th 247, 252 n.2 (5th Cir. 2021) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)). To the extent this Memorandum references documents incorporated by reference into the FAC, Eyemart submits such documents are part of the FAC under these principles.

100425068.8

website, are unresponsive to the grounds for her dismissal, as explained more fully below at Section III.A of the Argument.

### B. Additional Plaintiffs Lash and Mees

The FAC added two individuals, Georgianna Lash and Aaron Mees, as Plaintiffs. Am. Compl., at ¶¶ 29-30 (Dkt. #29). Ms. Lash is a resident of South Carolina and Mr. Mees is a resident of Texas. *Id*. Both allege to have visited the Website at some point in 2023, and to have entered prescription information into the Website during those visits. *Id*.

### C. Additional Website Allegations

Plaintiffs allege that when a user on the Website wishes to purchase a pair of glasses, the user is presented with the option to select lens type, and, if that user wishes to have prescription lenses included on those glasses, the user can select to enter such prescription information manually, upload a file with prescription information, send prescription information in at a later date, or use the prescription information on file with Eyemart. *Id*. at ¶¶ 70-72. As alleged, users can then direct those glasses to be shipped to any address of the user's choosing. *Id*. at ¶ 73. None of these allegations regarding information being entered on the Website are attributed to any of the named Plaintiffs in this case but are instead generally described as potential scenarios for generic, unnamed Website visitors.

When a user is on the Website, Plaintiffs claim that certain interactions with the Website are sent directly from the user to Meta, which Meta analyzes and provides back to Eyemart to assist Eyemart with advertising efforts. *Id*. at ¶ 106. According to the FAC, details allegedly sent to Meta include (i) what page(s) on the Website the user looked at (each a "PageView Event"), (ii) when a user subscribes for updates (each a "SubscribeButtonClick"), and (iii) when a user adds an item to their digital shopping cart (each an "AddToCart Event"). *Id*. at ¶107. The AddToCart Event

allegedly discloses to Meta when a user adds frames to the user's cart including the product ID of the frames, their make and model, and price. *Id*. at 122.

While Plaintiffs claim some "details of prescription eyewear" are sent to Meta (*id*., referencing Figures 12 and 13 of the FAC), there are no factual allegations that the details shared with Meta include any personal or prescription details (such as the name on the prescription, or the prescription information). The only information Meta is alleged to receive when a user purchases glasses on the Website consists of the e-commerce details noted above. *See id*. at pg. 32, Figure 16 (noting that information allegedly sent to Meta includes (i) "AddToCart" (that the user added something to their cart); (ii) "EyemartExpress.com" (that the user was on Eyemart's Website); (iii) 2name%22%3A%22Plastics (that the frames added were a specific type of plastic); (iv) 2LensAdvizor (that the lenses on the frames would be provided by a third party, such as an optometrist); and (v) "c_user=[redacted]" (that that browser used for that Website visit is logged into a Facebook account with an associated Facebook user ID)).

Thus, based on the facts pleaded in the FAC (as per the parentheticals noted above), none of the snippets of code highlighted in Plaintiffs' FAC show any disclosure of IIHI to Meta. Rather, the information allegedly disclosed to Meta is similar to what is disclosed to Meta through user interactions with many other online retailers of fashion eyewear or sunglasses with the same website analytics software.[2]

---

[2] Plaintiffs' FAC also alleges that Eyemart "uploads customer lists to Meta" or otherwise provides Meta with "offline event data." *Id*. at ¶¶ 160-164. However, the cited factual basis for these claims consists solely of helpdesk articles ***from Meta*** regarding what website providers who implement the Meta Pixel onto their website could do under certain configurations and parameters. *Id*. at fn. 71-75. None of these cited materials mention Eyemart at all.

### III.  ARGUMENT

#### A.  Rule 12(b)(6) Standard

Rule 12(b)(6) requires a court to dismiss an action if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While a complaint is only required to have "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*; *see also Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

#### B.  Plaintiffs Rand, Gottschau, and Soto Restate Allegations this Court has Already Rejected

A vast majority of Plaintiffs' allegations center on visitors searching the Website for innocuous information and using the Website to locate eye doctors and receiving a link to those third-party optometrists' websites to schedule appointments with those eye doctors. *See, e.g.,* Am. Compl., at ¶¶ 113-120; 133-135; 225, etc. (Dkt. #29). As aptly stated by Judge Pittman's *American Hospital Association* ruling, a website and the tools used to improve that website (such as the Meta Pixel) have no way of knowing that the health information being entered on the site is the personal health information of the same individual logged into a social media website on that device and browser. "Simply put, Identity (Person A) + Query (Condition B) ≠ IIHI (Person A has Condition B)." *Am. Hosp. Ass'n v. Becerra*, — F. Supp. 3d ---, No. 4:23-cv-1110, 2024 WL 3075865, at *14

100425068.8

(N.D. Tex. June 20, 2024) "If a covered entity's [unauthenticated public webpage] greets visitors with a dropdown box requesting their subjective motive for visiting the page, that would be one thing…But absent such an admittedly bizarre scenario, the Proscribed Combination cannot become IIHA as unambiguously defined." *Id.*

It was on this basis that the Court dismissed the original Complaint:

> Plaintiffs' threshold argument that the interception was a violation of HIPAA fails because they have not shown that any IIHI was present in the communications at issue here. Plaintiffs have not sufficiently alleged that they entered any personal health information into the website. Nor do they allege how the[] website is set up to enter prescription information or similar personal health information. . . . At most, Plaintiffs have alleged that they visited the site to look at glasses they could then go into the store to order, and that they intended to search for the contact information for eye doctors in their location while on the website. None of these subjective motives is sufficient to constitute individually identifiable health information under HIPAA.

> Courts have found that HIPAA does not extend to liability for entities to guard against visitors' subjective motive for visiting the page. Even if *most* people visit [the website] for reasons related to their own healthcare, without *knowing* a particular query relates to a category of information in Section 1320d(6) [of HIPAA], metadata from [an unauthenticated public webpage] search cannot constitute IIHI. Simply put, Identity (Person A) + Query (Condition B) ≠ IIHI (Person A has Condition B). Following that formula, the fact that Pixel shared with Meta that Plaintiffs looked at glasses on a site that offers both prescription lenses and nonprescription lenses on their products does not share any of their IIHI. Similarly, the data allegedly shared with Meta that Plaintiffs searched for local eye doctors and may have followed the links provided to the doctor's websites, which is a step further than Plaintiffs have pled, does not establish when and where eye exams were scheduled or patient status as Plaintiffs have claimed.

Mem. Op., at pg. 8-9 (Dkt. #28) (internal citations and quotations omitted).

The only allegation added by Missouri Plaintiff Rachelle Rand is that her subjective motive for visiting the Website was to "purchase prescription eyewear as well as schedule an appointment for an eye exam" (Am. Compl., at ¶26 (Dkt. # 29)), but Ms. Rand does not allege that she actually did purchase eyewear and her previous allegations about scheduling an appointment were rejected by the Court because "[t]he mere standard filtering based on the type of website the Plaintiffs visited is not convincing enough here to demonstrate any private health information was shared."

100425068.8

Mem. Op., at pg. 9 (Dkt. #28).  Colorado Plaintiff Esperanza Gottschau and Illinois Plaintiff Ramon Soto have pleaded no additional factual allegations as to their personal interactions on the Website.

The Court dismissed the allegations brought by the three original Plaintiffs, and those Plaintiffs have added no material factual allegations that would require a different outcome. All three Plaintiffs should be dismissed with prejudice. *See Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (holding that failure to cure defects after amendment are valid grounds to dismiss with prejudice).

## C. Plaintiffs Lash and Mees Do Not Plead Disclosure of IIHI to Meta

Even if taken as true that Plaintiffs Georgianna Lash and Aaron Mees entered their prescription information into the Website, the FAC goes on to concede that only limited, e-commerce information sent to Meta. *See* Am. Compl., at pg 32, fig. 16 (Dkt. #29). As such, there is no way for Meta, absent clairvoyance that "HIPAA doesn't mandate" (*Am. Hosp. Ass'n*, 2024 WL 3075865, at *14) to know that either of these Plaintiffs needed prescription eyewear for themselves. First, they could have been ordering fashion eyewear or sunglasses. Further, somebody else on a computer where those Plaintiffs were logged into their Facebook account could have been ordering eyewear. The Plaintiffs could have been ordering them for a relative. The Plaintiffs can ship the ordered eyewear to any address the Plaintiffs choose (Am. Compl., at ¶73 (Dkt. #29)) further emphasizing the lack of connection between the Facebook account on the device being used and the prospective customer for whom the glasses are being ordered.

As explained in another case and supported by the documents incorporated by reference into Plaintiffs' FAC:

> [I]n order for the Pixel to have transmitted the relevant information to Meta, several conditions must have been met. To summarize, in addition to [entering PHI into the] website, the [user] must have also: (1) had a Facebook account at the time the

[PHI] was [entered]; (2) used a web browser that didn't block the Pixel by default; (3) been simultaneously logged into the [user's] own Facebook account while [entering] the [PHI]; (4) been simultaneously logged into Facebook on the same device that the [user] used to [enter] the [PHI]; (5) been simultaneously logged into Facebook using the same browser through which the [user entered] the [PHI]; and (6) not deployed any number of browser settings or add-on software that would have blocked the Pixel.

*Martinez v. D2C, LLC*, Case No. 23-21394-Civ-Scola, 2024 WL 4367406, at *7-8 (S.D. Fla. Oct. 1, 2024). *See also* Am. Compl., at fn. 35-41, 45-53 (Dkt. #29) (publications from Meta explaining the functionality of the Meta Pixel). This means that even if Meta was clairvoyant and knew which orders on the Website were for the Facebook user logged in on that device/browser at time of purchase, Plaintiffs do not even plead the necessary facts as noted above to show the pixel on the Website actually sent anything to Meta as to these particular Plaintiffs. As such, even accepting the allegations pleaded as true, Plaintiffs Lash and Mees' claims should be dismissed as well.

**D.**     **Eyemart Cannot "Eavesdrop" on Communications Eyemart is a Party To**

Eyemart previously briefed the issue of one-party consent under the Electronic Communications Privacy Act ("ECPA") and Missouri wiretapping law. *See* Eyemart Mem. in Supp. of Mot.to Dismiss, at pg. 10-14 (Dkt. #15). Those arguments are incorporated herein by reference and Counts I and II of Plaintiffs' FAC should be dismissed for the reasons previously stated and for the reasons this Court already found that "[n]one of [Plaintiffs'] subjective motives is sufficient to constitute individually identifiable health information under HIPAA." Mem. Op., at pg. 8 (Dkt. #28).

**E.**     **Alleged HIPAA Violations Do Not Overcome One-Party Consent Laws**

Further, Plaintiffs' continued reliance on HIPAA, a statute which does not provide a private right of action, is misplaced. This is a separate basis for dismissal of Counts I and II. Congress expressly rejected empowering individuals to bring private actions based on alleged violations of

HIPAA. *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) ("Because HIPAA specifically delegates enforcement, there is a strong indication that Congress intended to preclude private enforcement."). Instead, Congress gave the U.S. Department of Health and Human Services' ("HHS") Office for Civil Rights ("OCR") and the State Attorney General the ***exclusive authority*** to bring a right of action against covered entities for improper disclosure of IIHI. 42 U.S.C. §§ 1320d–5, d–6; *see also Espinoza v. Gold Cross Servs.*, 2010 UT App. 151 (2010) (explaining that in 2009, the statute changed to allow both Health and Human Services and each states' attorney generals to enforce HIPAA).

Other courts have consistently rejected attempts to reclassify HIPAA violations as recoverable torts. *Acara*, 470 F.3d at 571-72 ("Every district court that has considered this issue is in agreement that [HIPAA] does not support a private right of action."). *Scoggins v. Floyd Healthcare Mgmt. Inc.*, Case No. 4:14-CV-00274, 2016 WL 11544774, at *42 (N.D. Ga. June 10, 2016) ("HIPAA does not provide a civil remedy. Accordingly, [plaintiff] cannot pursue claims of negligence per se against these defendants for an alleged HIPAA violation"); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) (plaintiffs "cannot manipulate the common law to state a private, statutory cause of action where none exists."). Plaintiffs have been consistently barred from bringing breach of contract claims based on HIPAA violations. *Id.*; *see also In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1222 (S.D. Fla. 2022) ("Because Defendants are required by law to adhere to HIPAA without receiving any consideration from Plaintiffs or any other patient, these provisions cannot create contractual obligations.").[3]

---

[3] While some district courts have allowed private HIPAA violation lawsuits labeled as "wiretapping" claims to advance past the motion to dismiss stage, no federal appellate level court has endorsed this practice, as U.S. District Judge Thomas Thrash recently noted on the issue,

If a party brings a claim for negligence that would not survive a motion to dismiss but for allegations of HIPAA violations, that claim must be dismissed. The same goes for breach of contract, and the innumerable other ways plaintiffs have attempted to create a private cause of action under HIPAA where no such private right of action is permitted.

Similarly, the same approach applies to Plaintiffs' various claims alleged in the FAC. When one takes away Plaintiffs' allegations of HIPAA violations, Plaintiffs allegations are no different than cases which have been dismissed across the country when brought against online retailers. *Augustine v. Great Wolf Resorts, Inc*., Case No. 23-cv-00281-DMS-DTF, 2024 WL 3450967 (S.D. Cal. July 18, 2024) (dismissing Meta Pixel wiretapping claim brought against hospitality retailer); *Hartley v. Urban Outfitters, Inc*., Case No. 23-4891, --- F.Supp.3d ----, 2024 WL 3445004 (E.D. Pa. July 17, 2024) (same against clothing retailer); *In re: BPS Direct, LLC*, Case No. 22-CV-4709, 2023 WL 8458245 (E.D. Pa. Dec. 5, 2023) (same); *Cook v. GameStop, Inc*., Case No. 2:22-CV-1292, 2023 WL 5529772, at *4 (W.D. Pa. Aug. 28, 2023), *appeal filed*, No. 23-2574 (3d Cir. Aug. 29, 2023) (holding that a plaintiff "doesn't have a reasonable expectation of privacy in this kind of public shopping behavior in the physical world, and she doesn't have it in the digital world, either.").

Additionally, Plaintiffs still do not allege that the Meta Pixel was installed on the Website with the motivation to commit a crime or tort, but rather to enhance consumer interactions with the Eyemart Website. "[A] plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication ***for the purpose of a tortious or criminal act*** that is

---

"the weight of persuasive authority in similar pixel tracking cases" does not allow for such recharacterizations of HIPAA violations into private rights of action. *T.D. v. Piedmont Healthcare, Inc*., Case No. 1:23-CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ("*Piedmont I*").

***independent of the intentional act of recording***." *In re Google Cookie Placement*, 806 F.3d at 145 (emphasis added); *see also Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) ("[T]o survive a motion to dismiss, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording."); *Brown v. Learfield Communications, LLC*, Case No. 1:23-CV-00374-DAE, 2024 WL 3676709, at *5 (W.D. Tex. June 27, 2024) ("Plaintiff has not alleged that [Defendant] deliberately sought to harm Plaintiff by using marketing tools. Therefore, because Plaintiff has failed to allege an underlying crime or tort as well as an intent to commit a crime or tort, the Wiretap Act claim is dismissed.").

In ruling on those plaintiffs' motion for reconsideration, Judge Thrash further clarified that plaintiffs cannot overcome the one-party consent rule through claiming violations of HIPAA because the alleged interception is not independent from the alleged crime/tort (where, but-for the alleged interception, there is no crime/tort for violation of HIPAA). *See T.D. v. Piedmont Healthcare, Inc*., Case No. 1:23-CV-5416-TWT (N.D. Ga. Dec. 10, 2024) (Dkt. # 51) ("*Piedmont II*") (citing *Okash v. Essentia Health*, Case No. 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024); *Nienaber v. Overlake Hosp. Med.* Ctr., Case No. 2:23-cv-01159-TL, 2024 WL 2133709 (W.D. Wash. May 13, 2024)).

Whether the cause of action is based in tort, contract, or wiretapping law, Plaintiffs are not permitted to bring a cause of action reliant on alleged violations of HIPAA. The role of enforcing HIPAA was reserved for the federal agency overseeing compliance with HIPAA. Further, Plaintiffs fail to plead that Eyemart's incorporation of the Meta Pixel on the Eyemart Website was done for the purpose of committing a crime or tort or how the "interception" could be independent from the alleged crime (violation of HIPAA). Instead, Plaintiffs' allegations are that Meta designed

the Meta Pixel, and Eyemart implemented the Meta Pixel on the Eyemart Website, to enhance the consumer experience. These allegations fall well short of what is required for Plaintiffs to avoid otherwise applicable one-party consent rules. Counts I and II should therefore be dismissed.

### F. Any Information Sent to Meta Is Not Sent Contemporaneously

As previously briefed, all three of the wiretap statutes cited by Plaintiffs require the communication at issue to be wiretapped while the communication is occurring. *See* Eyemart Mem. in Supp. of Mot.to Dismiss, at pg. 14-15 (Dkt. #15). As previously explained:

> In other words, these statutes give "intercept" its common meaning, which is perhaps best understood through a football analogy. In American football, a ball can only be intercepted when it is "in flight." Once a pass receiver on the offensive team has caught the ball, the window for interception has closed, and defenders can only hope to force a fumble. In essentially the same way, a qualifying "intercept" under the ECPA… can only occur where an e-mail communication is accessed at some point *between* the time the communication is sent and the time it is received by the destination server, at which point it becomes a 'stored communication' within the meaning of the [statute]."

*Fraser v. Nationwide Mut. Ins. Co*., 352 F.3d 107, 114 (3d Cir. 2003. *See also Glob. Pol'y Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 638 (E.D. Va. 2009); *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967, at *5 (Cal. Super. Ct. 2023) (dismissing claim against healthcare provider because "the duplication and sending of Facebook's secret code happens after the request reaches its destination" and thus the "Plaintiffs have not alleged Defendant's 'interception' while 'in transit'"); *Licea v. Cinmar, LLC,* 2023 WL 2415592, at *9 (C.D. Cal. Mar. 7, 2023) (dismissing claim "because Plaintiffs do not adequately allege that their conversations were intercepted in transit").

For there to be an "interception" under wiretapping laws, there needs to be an intended sender, an intended receiver, and a party in the middle which cuts off the direct line between sender and receiver, as in the above football analogy and shown on the following page:



In prior briefing on this issue, Plaintiffs conceded that the pixel's functionality is not that of a phone wiretap, whereby the communication flows from speaker, to wiretapper, and then to intended receiver. Dkt. #24, pg. 18. Instead, Plaintiffs have acknowledged that what happens is the pixel "**creates a new HTTP Request** on the user's device, which duplicates the information sent to the website and **sends a copy to Meta**." *Id*. (emphasis added). This means, what Plaintiffs complain of is not an "interception" such as in football terms, but two separate passes to two separate receivers as shown below:



If Congress, Illinois, or Missouri wish to enact new statutes or amend existing statutes to cover the technologies at issue in Plaintiffs' FAC similar to what those governmental bodies did in the 1980s when enacting phone wiretapping statutes, then they are free to do so. However, those statutory causes of actions and associated cases applying those laws do not cover the functionalities of modern website analytics software. As stated above in the football context, wiretapping laws cover when communication is intercepted between sender and receiver. It does not cover when two separate balls are thrown to two separate receivers.

This Court should therefore dismiss Counts I to III for failure to state a claim.

## G. Plaintiffs Consented to Any Tracking at Issue

Each of the Plaintiffs state they had Facebook profiles with their identifying information contained therein. Am. Compl., at ¶¶ 26-30 (Dkt. #29). As per the documents incorporated by reference into Plaintiffs' FAC, when they took advantage of Meta's free social media services,

Plaintiffs each consented to Meta placing a "c_user" cookie on any device where Plaintiffs log into their Facebook account, for up to a year. *Id.* at ¶103.

Plaintiffs cannot agree to allow Meta to track their online activities at websites like Eyemart's Website, enter their information into websites from devices they agreed to allow Meta to track, and then complain of unconsented "injury" when Meta allegedly tracks their online activities at Eyemart's Website. Plaintiffs provide their information to Meta by agreeing to let Meta track their online activities similar to individuals who agree to have devices installed on their TVs to determine Nielsen ratings. The flow of information is not from Plaintiffs to Eyemart to Meta. It is from Plaintiffs to Eyemart and Plaintiffs to Meta, as diagramed above.

In sum, Plaintiffs gave their names and all other identifying details to Meta (not Eyemart) and agreed to allow Meta to track their online activities. Plaintiffs are seemingly now suing Eyemart (not Meta) for Plaintiffs' conscious decision to enter eyewear information on Eyemart's Website on a device that Plaintiffs affirmatively allowed Meta to track. Eyemart doesn't ask users to log into Meta before visiting the Eyemart Website. Plaintiffs do this of their own volition. There is no requirement for users to enter any personal or medical information into the Website, nor does the Website prohibit the use of VPNs, ad blockers, privacy browsers, or the numerous other ways (noted in Plaintiffs' documents incorporated by reference) for individuals who wish for a more private internet and website experience. *Id.* at fn. 24 ("Using a VPN prevents you from leaving footprints on the web.").

If Plaintiffs' personally identifiable information was disclosed to Meta, it was through the actions of Plaintiffs and Meta, not Eyemart. Counts I-III should therefore be dismissed.

### H. Plaintiffs Fail to Plead a Claim under the Illinois Eavesdropping Statute

As explained above, the sole Illinois Plaintiff made no amendments to his allegations regarding his personal use of the Website which would alter the Court's prior ruling on this cause

of action, so for the reasons stated in Eyemart's original Motion to Dismiss, Count III should be dismissed.

### I.     Plaintiffs Fail to Allege What Contract Terms Were Breached

Plaintiffs attempt to cure their previous breach of contract deficiencies by citing to Eyemart's Ecommerce Privacy Policy, which has an effective date of September 10, 2024. *Id*. at ¶¶ 169-177.  Plaintiffs Rand, Gottschau, Lash, and Mees allege to have visited the Website in 2023. *Id*. at ¶¶ 26-27, 29-30.  Plaintiff Soto alleges to have visited the Website in 2022. *Id*. at ¶ 28. Plaintiffs fail to allege how a 2024 contract could be breached by their 2022-2023 conduct. Plaintiffs similarly fail to allege required factual claims such as whether they read or relied on this 2024 contract in conducting their 2022-2023 conduct. *See Willingham v. Glob. Payments, Inc*., Case No. 1:12–CV–01157, 2013 WL 440702, at *20 (N.D. Ga. Feb. 5, 2013) ("broad statements of reliance on a defendant's website and privacy statement do not give rise to contract claims where, as here, Plaintiffs do not allege that they read and relied upon those statements").

Plaintiffs' contractual allegations, again, do not meet the particularity requirements under federal or state law, and the Court should dismiss Counts V and VI accordingly.

### J.     Plaintiffs Fail to Allege a Plausible Factual Basis for an Expectation of Privacy in the Circumstances Alleged Here

Eyemart has previously briefed why Plaintiffs' claims for "intrusion upon seclusion" fail under Colorado, Missouri, and Illinois law. As the Colorado, Missouri, and Illinois Plaintiffs have not meaningfully amended their factual allegations as to their personal interactions on the Website, those same arguments are incorporated by reference herein.

Under Texas law, a claim of intrusion upon seclusion requires pleading "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or

concerns; (2) which would be highly offensive to a reasonable person; and (3) that caused injury." *Rogers v. City of Hous.*, 627 S.W.3d 777, 792 (Tex. App. 2021).

South Carolina does not have a common law claim for intrusion upon seclusion, but instead categorizes privacy claims into three categories: 1) wrongful appropriation of personality; 2) wrongful publicizing of private affairs; and 3) wrongful intrusion into private affairs. *Swinton Creek Nursery v. Edisto Farm Credit*, 334 S.C. 469, 514 S.E.2d 126 (1999). The first applies to name, image, and likeness violations, akin to trademark law violations, which is not applicable here. *Snakenberg v. Hartford Cas. Ins. Co., Inc.*, 299 S.C. 164, 383 S.E.2d 2 (Ct.App.1989). The second requires showing (1) publicizing, (2) absent any waiver or privilege, (3) private matters in which the public has no legitimate concern, (4) so as to bring shame or humiliation to a person of ordinary sensibilities. *See Meetze, supra; Tureen v. Equifax, Inc*., 571 F.2d 411 (8th Cir.1978). That is not applicable because there is no allegation as to publication of the information at issue. Finally, wrongful intrusion into private affairs requires proving (1) an intrusion, (2) into that which is private, (3) of a nature that nature that would cause mental injury to a person of ordinary feelings and intelligence in the same circumstances, and (4) that was done by the defendant intentionally. *Snakenberg*, 383 S.E.2d, at 6.

As stated above, ***Plaintiffs*** are the ones who signed up for free Facebook accounts and agreed to have the devices they use for those accounts monitored by Meta. It was ***Plaintiffs'*** devices (not Eyemart's) that had the ability to send Plaintiffs' browsing history to Meta. Eyemart's implementation of the Meta Pixel on its Website merely allows Meta to track anonymous Website interactions so Eyemart, like a vast majority of modern e-commerce platforms, can determine what users like to see, confirm the Website is functional on mobile and web browsers, and otherwise create a better experience for those anonymous website visitors. To the extent these Website

100425068.8

interactions are associated with a particular "c_user" Facebook ID, it is because that individual expressly agreed to provide those details to Meta and sent the website interactions to Meta his or herself.

Neither under Texas nor South Carolina law can the conduct of an eyewear retailer implementing website analytics software which is utilized by countless other retailers across the country rise to the level of "highly offensive" or be such to cause "mental injury to a person of ordinary feelings" as required to state a claim under those states' common law. As a result, Count IV should be dismissed with prejudice.

## IV.     CONCLUSION

Because Plaintiffs' First Amended Complaint does not remedy the fundamental pleading defects the Court previously identified, and still fails to state any plausible factual basis for a cause of action, dismissal is warranted.

WHEREFORE, for the foregoing reasons, Eyemart Express, LLC respectfully requests this Court dismiss Plaintiffs' First Amended Complaint and render any and all further relief which this Court deems just and proper.

100425068.8

Dated: January 6, 2025

By: */s/ Andrew F. Newman*
Andrew F. Newman
Texas State Bar No. 24060331
**POLSINELLI PC**
2950 N. Harwood Street, Suite 2100
Dallas, Texas 76005
Tel: (214) 661-5506
Fax: (214) 397-0033
Email: afnewman@polsinelli.com

John C. Cleary (admitted *pro hac vice*)
**POLSINELLI PC**
600 Third Avenue, 42nd Floor
New York, NY 10016
Tel: (212) 413-2837
Fax: (212) 684-0197
Email: john.cleary@polsinelli.com

Jonathan E. Schmalfeld (admitted *pro hac vice*)
**POLSINELLI PC**
7676 Forsyth Boulevard, Suite 800
St. Louis, MO  63105
Tel: (314) 622-6621
Fax: (314) 231-1776
Email: jschmalfeld@polsinelli.com

**ATTORNEYS FOR DEFENDANT**

100425068.8

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 6, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system. Any other counsel of record will be served by a facsimile transmission and/or first-class mail.

*Andrew F. Newman*
Andrew F. Newman