IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RACHELLE RAND, ESPERANZA GOTTSCHAU, RAMON SOTO, GEORGIANNA LASH, and AARON MEES on Behalf of Themselves and All Others Similarly Situated<br><br>**Plaintiffs,**<br><br>v.<br><br>EYEMART EXPRESS, LLC,<br><br>**Defendant.** | Case No. 3:24-cv-00621-N |

### DEFENDANT EYEMART EXPRESS, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

On motion by Defendant Eyemart Express, LLC ("Eyemart"), the Court dismissed this case without prejudice on October 1, 2024, with leave to re-plead. (ECF 28) Repleading, by Amended Class Action Complaint dated October 31, 2024 (ECF 29) (the "Amended Complaint"), did not cure the defects in this case, prompting another motion to dismiss by Eyemart (ECF 32), which Plaintiffs opposed on February 17, 2025 (ECF 36) (the "Response"). As there is very little added in the Amended Complaint, and essentially nothing new to litigate, as explained more fully below, the Amended Complaint should be dismissed, and the dismissal should be with prejudice.

**I.   PLAINTIFFS FAILED TO CURE DEFECTS IN THEIR INITIAL COMPLAINT.**

Plaintiffs claim that "Plaintiffs Rand, Gottschau, and Soto each *further allege*…" (ECF 36, pg. 5), however a simple redline of the Complaint against the Amended Complaint shows that there is nothing "further alleged" as to Plaintiffs Gottschau's and Soto's interactions with the Eyemart Website. Plaintiff Rand's only new allegation is that she had the subjective motive of

1

visiting the Website to purchase prescription eyewear but not that she actually *did* purchase such prescription eyewear or enter any prescription information to the Website. "Courts around the country [dismiss] similar Meta Pixel claims for failure to adequately describe the [Health Insurance Portability and Accountability Act ("HIPAA")]-protected information." *Santoro v. Tower Health*, No. 22-4580, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) (compiling cases).

> This Court's Order dismissing Plaintiffs' Original Complaint held:
>
> Plaintiffs' threshold argument that the interception was a violation of HIPAA fails because they have not shown that any IIHI was present in the communications at issue here. Plaintiffs have not sufficiently alleged they entered any personal health information into the website.

(ECF 28, pg. 7-8). Plaintiffs Rand, Gottschau, and Soto do not allege they entered any information into the website that was not previously alleged. Those allegations were deemed insufficient in their dismissed Complaint and remain insufficient in the Amended Complaint. Further, as those Plaintiffs are the only residents of Missouri, Colorado, and Illinois named in the Amended Complaint, Plaintiffs' Missouri and Illinois statutory claims (Counts II-III) and Missouri, Illinois and Colorado common law claims (Counts IV-VI) should be dismissed on that basis as well, this time with prejudice. *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit.").

## II. PLAINTIFFS ADMIT THEIR COMMUNICATIONS ARE NOT INTERCEPTED.

This is not a situation where a football is "intercepted" in flight, which would be the only actionable "eavesdropping" or "interception" activity under the statutory scheme. Indeed, Plaintiffs' Response concedes that the "process of monitoring, *duplicating*, and disclosing to Meta for associations with the user's [Facebook ID] *occurs through users' browsers*, at the moment communications are being sent to a website's servers." (ECF 36, pg. 3) (emphasis added).

2

"Plaintiffs further allege that the Pixel *duplicates* the information obtained from Plaintiffs' activity on the Website and *then sends* it to Meta." *Id*. (emphasis added). In doing so, Plaintiffs admit they do not and cannot plead facts to support their claim that their public website interactions are "intercepted."

Plaintiffs instead seek to rely on out-of-circuit precedent to argue that Plaintiffs' allegation of two footballs thrown to two separate receivers is sufficient. (ECF 36, pg. 14) (citing *United States v. Szymuszkiewicz,* 622 F.3d 701 (7th Cir. 2010)). This Court is bound by Fifth Circuit precedent, not Seventh Circuit precedent. The Fifth Circuit, along with "the majority of courts applying the rule from *Steve Jackson Games* have found that interception must in fact occur during transit or 'in flight,' likening the acquisition to an interception in a football game." *Speer v. Saenz*, Case No. H–13–1538, 2015 WL 12551069 (S.D. Tex. Feb. 19, 2015) (citing *Steve Jackson Games, Inc. v. U.S. Secret Service*, 36 F.3d 45, 461–62 (5th Cir. 1994) and distinguishing the Seventh Circuit ruling in *Szymuszkiewicz* as the minority view on what an "interception" means in electronic communications under the Wiretap Act).[1] *See also Ins. Safety Consultants, LLC v. Nugent*, Case No. 3:15-cv-2183-BT, 2019 WL 7377031, at *4 (N.D. Tex. Dec. 31, 2019) ("[M]ost courts have found that an interception must occur during transit or in flight, likening the acquisition to an interception in a football game."); *Cardinal Health 414, Inc. v. Adams,* 582 F. Supp. 2d 967, 979 (M.D. Tenn. 2008) ("The Third, Fifth, Ninth, and Eleventh Circuits all agree."); *T.D. v. Piedmont Healthcare, Inc*., Case No. 1:23-CV-5416-TWT, 2024 WL 3972984, at *4 (N.D. Ga.

---

[1] The only other case in the Fifth Circuit Plaintiffs cite on this issue is *Sweat v. Houston Methodist Hosp*., Case No. H-24-775 2024 WL 3070184, at *1 (S.D. Tex. June 20, 2024). However, whether the interceptions at issue were "contemporaneous" or happened "in flight" was not argued or ruled on in that case. Nor was this distinction at issue in the Western District of Washington case cited by Plaintiffs on this issue. *Castillo v. Costco Wholesale Corp*., No. 2:23-CV-01548-JHC, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024).

Aug. 28, 2024) ("[T]he weight of persuasive authority in similar pixel tracking cases supports [defendant]'s position."); *Quantum Fitness Corp. v. Cybex Int'l, Inc.*, Case No. H–14–763, 2016 WL 6909284, at *4 (S.D. Tex. Feb. 10, 2016) ("in the Fifth Circuit, interception must occur contemporaneously with transmission." (citing *Forsyth v. Barr*, 19 F.3d 1527, 1535 (5th Cir. 1994)).[2]

Plaintiffs allege the Pixel at issue causes "users' devices to duplicate the information obtained from [those users'] activity on the webpage ***nearly instantly***, which ***is then*** sent by the users' devices, based on instructions from the Pixel, to Meta." (ECF 29, ¶ 138) (emphasis added). While this "nearly instant" duplication and transmission may be sufficient under Seventh Circuit law, the Fifth Circuit follows the majority rule that this is insufficient to state a claim under the federal Wiretap Act.[3] Count I of Plaintiffs' Amended Complaint should therefore be dismissed under binding Fifth Circuit precedent.

---

[2] The Fifth Circuit and majority's interpretation of what "intercept" means in the Wiretap Act context is also consistent with the dictionary definition of the word, which is to "stop ... before arrival ... or interrupt the progress or course." *Webster's Third New International Dictionary* (2002). As described in the Amended Complaint, the functionality of the Meta Pixel does not cause any information to be stopped or interrupted before its arrival.

[3] As noted above, the Missouri and Illinois Plaintiffs have failed to cure the deficiencies the Court identified in their original Complaint. But to the extent this Court determines further grounds are necessary to dismiss the Missouri and Illinois wiretapping statute claims, the Missouri wiretap statute is modeled after the federal statute, and the reasoning for dismissal under the federal statute is equally applicable under the Missouri statute. *State v. King*, 873 S.W.2d 905, 908 (Mo. Ct. App. 1994) ("Our act was modeled after federal statutes enacted in 1968 and revised in 1986." (citing 18 U.S.C.A. §§ 2510–2521)). And the Illinois wiretapping statute only applies to oral communications, which the Illinois Plaintiff does not allege. *See* 720 ILCS 5/14-1(d) (defining "private conversation" as "any oral communication between 2 or more persons, whether in person or transmitted between the parties by wire or other means.").

### III. PLAINTIFFS LASH AND MEES' ATTEMPT TO OVERCOME THE RULING IN *AMERICAN HOSPITAL ASSOCIATION* IS UNAVAILING.

As stated in Defendant's motion, the e-commerce "events" that Plaintiffs' Amended Complaint alleges are disclosed to Meta do not include all of the information supplied by a Website visitor to Eyemart and, in particular, do not include healthcare-specific information. *See* ECF 33, at pg. 4-5 (citing Amended Complaint, ¶¶ 29, 30, 70-73, 106, 107, 122) (demonstrating the analytics data alleged to be received by Meta does not contain prescription information if entered by visitors into the Website). Rather, the only information Meta is alleged to receive when a user purchases prescription eyewear on the Website consists of the e-commerce details noted in the Amended Complaint. This point remains uncontroverted, as Plaintiffs Lash and Mees have no counter to this in the Response.

Instead, Plaintiffs obfuscate by claiming there is a "split on the issue of what is and is not covered under HIPAA" and then proceed to cite cases from California to try to distinguish their allegations from *American Hospital Association*. As noted above, and in the motion itself, the holdings of *American Hospital Association* fully dispose of the claims of Plaintiffs Rand, Gottschau, and Soto, and have not been overcome by the newly pleaded allegations of Plaintiffs Lash and Mees.

While Plaintiffs Lash and Mees allege that they purchased prescription eyewear for themselves on their computers while logged into their own Facebook accounts, because the limited data allegedly received by Meta according to the Amended Complaint is not IIHI, Plaintiffs Lash and Mees fail to state a claim under any of their proposed causes of action.[4]

---

[4] It is worth reiterating that the "c _ user" cookie, which Plaintiffs cite as more individualized than the IP address at issue in *American Hospital Association*, is placed on the computer of each Facebook user's device by Meta (not Eyemart) and is something those Facebook users agree to in their account creation/use terms and conditions with Meta, as reflected in the documents incorporated by reference by Plaintiffs. (ECF 29, fn. 38, 49, 53, and 71). Without that "c _ user"

## IV. PLAINTIFFS CONCEDE ANY "INTERCEPTION" WAS NOT FOR THE PURPOSE OF COMMITTING A CRIME OR TORT.

Plaintiffs' position on the applicability of the crime/tort exception to otherwise applicable one-party consent laws is unclear. In one section, Plaintiffs appear to claim (without citing any authority) that somehow "Defendant's mere status as a party to the conversation only exempts its conduct where Defendant is the intercepting party." (ECF 36, pg. 20). However, Plaintiffs' unsupported argument directly conflicts with the text of the Wiretap Act which states:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication ***or where one of the parties to the communication has given prior consent to such interception*** unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphasis added). There is no qualifier in the statute that the party giving the consent to the alleged interception must also be the party doing the alleged intercepting.

Plaintiffs next argue that alleging HIPAA violations can be used "as a hook" to establish a claim. (ECF 36, pg. 11) (citing *Roma v. Prospect Med. Holdings, Inc.*, No. 23-3216, 2024 WL 3678984, at *5 (E.D. Pa. Aug. 6, 2024)). However, the *Roma* case dealt with neither HIPAA nor one-party consent recording laws, but instead was analyzing use of the Federal Trade Commission ("FTC") Act "as the hook for a negligence *per se* theory" *Roma*, 2024 WL 3678984, at *10. The same is true for other cases cited by Plaintiffs as support in this section of their Response.[5]

---

cookie placed on Plaintiffs' computers by agreement between Plaintiffs and Meta, the generic Meta Pixel website analytics tool has no way of revealing the identity of any individual—only that an internet user clicked on certain sections of a public facing website. *See also Lloyd v. Facebook, Inc.*, Case No. 21-cv-10075-EMC, 2022 WL 4913347, *10 (N.D. Cal. Oct. 3, 2022) ("Facebook's current Data Policy clearly states that third-party data will be shared even if a user is logged off. As such, there was no reasonable expectation of privacy").

[5] *In re Ambry Genetics Data Breach Litig.,* 567 F. Supp. 3d 1130 (C.D. Cal. 2021), similar to *Roma*, dealt with applicability of the FTC Act to a negligence *per se* claim. *R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 890 (C.D. Cal. 2024) did not find alleged violations of HIPAA constituted an

As previously briefed, to meet the tort/crime exception to otherwise applicable one-party consent statutes, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *In re Google Cookie Placement*, 806 F.3d 125, 145 (3rd Cir. 2015); *see also Cohen v. Casper Sleep Inc.*, Nos. 17cv9325, 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018) (dismissing complaint where defendant collected data for targeted marketing); *Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("This criminal or tortious purpose must be separate and independent from the act of the recording" and noting that holding otherwise would be "circular" and would write the party-exception out of the statute).

As recognized in the *Piedmont Healthcare* case "the weight of persuasive authority in similar pixel tracking cases" is that the party exception forecloses liability for pixel technology claims under the Wiretap Act. *Piedmont Healthcare*, 2024 WL 3972984, at *4. *See also Williams v. TMC Health*, Case No. No. CV-23-00434-TUC-SHR, 2024 WL 4364150, at *4-5 (D. Ariz. Sept. 30, 2024) (dismissing Wiretap Act Claim "because Plaintiffs do not allege Defendant was *not* a party to the communications" and because "all the facts Plaintiffs alleged regarding Defendant's purpose in intercepting the communications point to one conclusion—a non-criminal, non-tortious purpose." (emphasis in original)); *Okash v. Essentia Health*, Case No. 23-482, 2024 WL 1285779, at *4 (D. Minn. March 26, 2024) ("because neither the alleged HIPAA nor privacy violations were independent of the interception, the crime-tort exception does not apply."); *Nienaber v. Overlake Hosp. Med.l Ctr.*, 733 F.Supp.3d 1072, 1096 (W.D. Wash. 2024) ("Plaintiff fails to plead a tortious or criminal use of the acquired communications, separate from the recording, interception, or

---

independent crime/tort under one party recording consent laws despite Plaintiffs' paraphrase claiming it did. Its finding on this issue was related to California-specific privacy laws not alleged here.

transmission… For this reason, the tortious or criminal act exception does not apply here."); *Williams v. Dukehealth*, No. 1:22-cv-727, 2024 WL 898051, at *8 (M.D.N.C. Mar. 1, 2024) ("Because the Amended Complaint alleges that the Defendant was a party to the communications and Plaintiff voluntarily sent them to Defendant, her claim of a violation of the ECPA should be dismissed."); *Rodriguez v. FastMed Urgent Care, P.C*., F.Supp.3d 352, 364 (E.D.N.C. 2024) ("Even viewing Rodriguez's complaint in the light most favorable to Rodriguez, FastMed intercepted and disclosed the class members' information for commercial use or gain, not to commit a crime or tort."); *Doe v. Kaiser Found. Health Plan, Inc*., No. 23-CV-02865, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (holding that using tracking technologies "for market research and consumer analysis solely for the benefit of" the defendant does not "sufficiently allege[] a tortious purpose" even if defendant violated HIPAA).

As stated in the *Learfield Communications* case, "Plaintiff has not alleged that Learfield deliberately sought to harm Plaintiff by using marketing tools. Therefore, because Plaintiff has failed to allege an underlying crime or tort as well as an intent to commit a crime or tort, the Wiretap Act claim is dismissed." *Brown v. Learfield Communications, LLC*, Case No. 1:23-CV-00374-DAE, 2024 WL 3676709, at *5 (W.D. Tex. June 27, 2024) *appeal dismissed*, No. 24-50632 (5th Cir. Nov. 13, 2024) (dismissing a pixel technology related Wiretap Act claim with prejudice).

Plaintiffs fail to show there has been any violation of HIPAA as explained in the motion and Section III above. And even if there has been a plausibly alleged violation of HIPAA (there has not been), Plaintiffs fail to plead a plausible factual basis for any allegation that Eyemart implemented the website marketing tools at issue, which are used by businesses across the country, ***with the purpose*** of violating HIPAA or any other law. As such, Counts I to III should be dismissed for those additional and independent grounds.

## V. PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED.

Plaintiffs cite to no Texas or South Carolina law which would support a claim for "intrusion upon seclusion" in those states and instead ask this Court to allow "invasion of privacy" claims to survive because courts in states which are not Texas or South Carolina have seemingly held online tracking to be "highly offensive" under those other states' common law. (ECF 36, pg. 20). Plaintiffs also cite to no Colorado or Illinois law on those issues, but as noted above the Colorado, Missouri, and Illinois Plaintiffs have not meaningfully amended their factual allegations as to their personal interactions on the Website, thus warranting a renewed dismissal and no further consideration of the laws of these states. "This circuit's well-settled precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings." *McClelland v. Katy Independent School District*, 63 F.4th 996, 1010 (5th Cir. 2023). Plaintiffs' common law claim for Intrusion Upon Seclusion (Count IV) should be dismissed.

Plaintiffs further have no explanation as to how the 2024 contract cited in the Amended Complaint could be breached by Plaintiffs' 2022-2023 website interactions. (ECF 32, pg. 16). Nor do they address their own failure to plead that they ever even read or relied upon the terms of any agreement. *See Willingham v. Glob. Payments, Inc*., Case No. 1:12–CV–01157, 2013 WL 440702, at *20 (N.D. Ga. Feb. 5, 2013) ("broad statements of reliance on a defendant's website and privacy statement do not give rise to contract claims where, as here, Plaintiffs do not allege that they read and relied upon those statements"). Nor can the HIPAA-required Notice of Privacy Practices give rise to a claim for breach of contract. *See Brush v. Miami Beach Healthcare Grp. Ltd*., 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) (holding that HIPAA-required notice provisions are not contractual in nature and merely informed patients of their rights under HIPAA; therefore, the breach of contract claim failed as a matter of law). All of which warrants dismissal of Plaintiffs' breach of contract claims (Counts V-VI).

For these and all the reasons stated in Eyemart's Motion to Dismiss, Counts IV, V, and VI of Plaintiffs' Amended Complaint should be dismissed.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Eyemart Express, LLC respectfully requests that this Court dismiss the Amended Complaint for failure to state a claim, that such dismissal be with prejudice in view of the procedural history of this case, and that the Court render such other and further relief as the Court deems proper.

Dated: March 17, 2025

By: */s/ Andrew F. Newman*
Andrew F. Newman
Texas State Bar No. 24060331
**POLSINELLI PC**
2950 N. Harwood Street, Suite 2100
Dallas, Texas 76005
Tel: (214) 661-5506
Fax: (214) 397-0033
Email: afnewman@polsinelli.com

John C. Cleary (*admitted pro hac vice*)
New York Bar No. 1969146
**POLSINELLI PC**
600 Third Avenue, 42nd Floor
New York, NY 10016
Tel: (212) 413-2837
Fax: (212) 684-0197
Email: john.cleary@polsinelli.com

Jonathan E. Schmalfeld (*admitted pro hac vice*)
Missouri Bar No. 68374
**POLSINELLI PC**
7676 Forsyth Boulevard, Suite 800
St. Louis, MO 63105
Tel: (314) 622-6621
Fax: (314) 231-1776
Email: jschmalfeld@polsinelli.com

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 17, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system.

*Andrew F. Newman*
Andrew F. Newman